IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PETER KOFI ANNAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:15cv1558 (AJT/MSN) |
| LORETTA LYNCH, *Attorney General* ) | |
| *of the United States of America, et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## **MEMORANDUM OPINION**

Peter Kofi Annan (the "plaintiff") has appealed the decision of the United States Citizenship and Immigration Services ("USCIS") denying his application for naturalization.[1] The parties have filed cross-motions for summary judgment. *See* [Doc. Nos. 10, 12]. On March 31, 2016, the Court held a hearing on the motions and took the matter under advisement.

For the reasons stated herein, the Court finds that under the doctrine of comity, as articulated by the Supreme Court of Virginia, the Commonwealth of Virginia would recognize the Ghanaian divorce decree terminating the Ghanaian marriage between Mary Yaa Obeng ("Obeng") and her previous husband, Adinkrah Kwasi Boampong ("Boampong"), and would therefore recognize the validity of the subsequent Virginia marriage between plaintiff and Obeng. Accordingly, the Court concludes that USCIS erred as a matter of law when it denied plaintiff's application for naturalization on the grounds that Virginia would not recognize Obeng's divorce from Boampong and that Obeng's subsequent marriage to plaintiff was therefore invalid. Accordingly, the Court further concludes that USCIS erred as a matter of law

---

[1] Plaintiff has filed this appeal pursuant to Section 310(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1421(c), which provides for de novo review.

when it decided that because plaintiff obtained his permanent residence status through an invalid marriage to Obeng, plaintiff was never "lawfully admitted to the United States for permanent residence" and was therefore ineligible for naturalization. *See* 8 U.S.C. § 1429. Plaintiff's Motion for Summary Judgment [Doc. No. 10] will therefore be GRANTED, defendants' Motion for Summary Judgment [Doc. No. 12] DENIED, and this case REMANDED to USCIS for further proceedings consistent with these rulings.

## I. BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[2]

Plaintiff is a native and citizen of Ghana. On June 11, 1995, plaintiff entered the United States on a three-month visitor's visa. On September 27, 1995, plaintiff married A.W. in Manassas, Virginia. Plaintiff and A.W. separated in April 1996 and finalized their divorce before the Prince William County Circuit Court on December 21, 1999.

Obeng is a native of Ghana. On August 20, 1992, Obeng entered into a customary Ghanaian marriage with Boampong. The marriage was arranged through Obeng's parents and Boampong's mother, and was finalized and celebrated in accordance with tribal custom.[3] They continued to live in Ghana as husband and wife until 1997, when Boampong received a United States immigrant visa through the Diversity Immigrant Visa Program, and he and Obeng moved

---

[2] The relevant applications, filings, decisions, and related documentation are included in the Administrative Record ("AR"), which this Court received on January 19, 2016 [Doc. No. 9] and February 29, 2016 [Doc. No. 16] (correcting an omission from the original Administrative Record, which resulted in the replacement of pages AR 198–207).

[3] Affidavits that accompany the Complaint describe these tribal customs as including the gifting of alcoholic and non-alcoholic beverages "in consideration of the marriage" as well as a social gathering hosted by the families. Obeng represents that she is a member of both the Ga and Akan tribe, whereas Boampong belongs to the Ashanti tribe. *See* [Doc. No. 1, Exs. A, B].

2

to Woodbridge, Virginia. Obeng became a lawful permanent resident of the United States on May 3, 1997, through her husband's "diversity immigrant" status.[4]

Thereafter, Obeng and Boampong separated and initiated divorce proceedings, which, also in accordance with tribal custom, involved arranging for a divorce through Boampong's mother (Ernestina Gyamfuah) and Obeng's father (Albert Lawson), who by affidavits dated October 18, 1999 represented that on August 6, 1998, the marriage was "customarily dissolved due to misunderstanding." *See* [Doc. No. 1-5]. Those affidavits were submitted to the Circuit Court of Ghana (Accra) in support of a joint motion, entitled "Motion Ex-Parte for Grant of Confirmation of Dissolution of Customary Marriage between Mary Obeng and Adinkrah Kwasi Boampong." [*Id.* at 1]. On October 19, 1999, the Circuit Court in Accra, Ghana, exercising personal jurisdiction over its citizens according to Ghanaian law, confirmed the dissolution of that marriage by formal decree. [*Id.* at 4]. Neither Obeng nor Boampong personally appeared in Ghana during these proceedings.

Plaintiff and Obeng married on January 16, 2001 in Prince William County, Virginia. That union has produced six children, none of which have reached the age of majority, and the parties have maintained a common and continuous residence in Virginia throughout their marriage. On February 16, 2001, Obeng filed a Petition for Alien Relative (Form I-130) requesting the issuance of an immigrant visa for plaintiff.[5] In connection with that petition, Obeng submitted the Order issued by the Circuit Court of Accra, Ghana, which granted the

---

[4] *See* [AR 199] ("Mr. Boampong was the principal immigrant and was admitted in immigrant classification DV1 (diversity immigrant). Ms. Obeng was the derivative, and was admitted in immigrant classification DV2 (spouse of a diversity immigrant).").

[5] An I-130 petition, which is filed by a lawful permanent resident or U.S. citizen, only establishes the relationship between the I-130 petitioner and an alien relative seeking an immigration visa or permanent residency; it does not change an alien's status. *See Mohammed v. Holder*, 695 F. Supp. 2d 284, 286 (E.D. Va. 2010).

3

motion filed by Albert Lawson and Ernestina Gyamfuah, requesting confirmation of the valid dissolution of the marriage between Obeng and Boampong. On July 23, 2003, during the pendency of Obeng's I-130 petition, plaintiff filed an Application to Register Permanent Residence or Adjust Status (Form I-485). USCIS approved Obeng's I-130 petition on September 13, 2004 and approved plaintiff's I-485 application on May 18, 2005.

On May 27, 2014, plaintiff filed an application for naturalization (Form N-400) and was interviewed by USCIS with respect to that application on September 11, 2014. On December 8, 2014, USCIS issued its initial determination, which concluded that plaintiff was not eligible for naturalization because he was not lawfully admitted for permanent residence in 2005. Specifically, USCIS determined that because neither Obeng nor Boampong was domiciled in Ghana at the time of their divorce—and because Virginia would not recognize a divorce obtained through their parents—Obeng's subsequent marriage to plaintiff was void. *See* [Doc. No. 1, Ex. C]. For this reason, USCIS concluded that because Virginia would not recognize the termination of Obeng's prior marriage, her marriage to plaintiff in Virginia was invalid for immigration purposes. [*Id.* at 3] (citing Va. Code Ann. § 20-43).

On February 4, 2015, plaintiff administratively appealed USCIS' initial determination by filing a Request for a Hearing on a Decision in Naturalization Proceedings (Form N-336). On July 24, 2015, after a hearing on April 16, 2015, USCIS affirmed its initial determination that plaintiff was ineligible for naturalization because he was unable to establish that he was lawfully admitted for permanent residence, relying specifically on *Jahed v. Acri*, 468 F.3d 230 (4th Cir. 2006).[6]

---

[6] Both the initial determination and final decision were signed by the same USCIS official. *See* [AR 161, 202]. As explained in USCIS' decision reaffirming the initial determination:

4

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). By statute, the Court's review of USCIS' decision "shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).[7]

---

> It was not known that Ms. Obeng's divorce from Mr. Boampong was done by proxy when USCIS adjudicated her I-130 petition and approved it on September 13, 2004. Had this fact been known, it would have resulted in the denial of the I-130 petition, which was the basis for your adjustment of status to that of a lawful permanent resident in immigrant classification IR6 (spouse of a United States citizen) on May 18, 2005. Accordingly, it appears that you were not lawfully admitted for permanent residence because you never established that Ms. Obeng was free to marry you and petition for you as her spouse. *See* INA 245(a). USCIS cannot recognize your permanent resident status as lawful if it was based on the erroneous approval of a visa petition.

[AR 200]. The final decision also references the testimony of Obeng admitted at the N-336 hearing that "neither she nor Mr. Boampong was in Ghana at the time of their divorce, and that they both resided in Virginia at the time of the divorce" and that "for a foreign divorce to be recognized by Virginia, at least one of the parties must be domiciled in the foreign jurisdiction." [AR 201] (defining "domicile" as "the present, fixed home of an individual to which he returns following temporary absences and at which he intends to stay indefinitely").

[7] Section 316 of the INA provides, in relevant part:

> A person whose application for naturalization . . . is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Because of this statutory mandate in the naturalization context, the Court is not limited to the facts in the administrative record. *See, e.g., Mobin v. Taylor*, 598 F. Supp. 2d 777, 780 (E.D. Va. 2009). Likewise, the Court may re-examine USCIS' application of Ghanaian law, which USCIS regards as "a question of fact." *See* [AR 199–200] ("When the petitioner relies on a foreign law to establish eligibility for the beneficiary, the application of the foreign law is a question of fact, which must be proved by the petitioner.").

5

When reviewing decisions rendered by USCIS, the district court must recognize that "[a]n applicant seeking to obtain the privilege of United States citizenship bears the burden of proof to establish that he or she is eligible for naturalization." *Nesari v. Taylor*, 806 F. Supp. 2d 848, 862 (E.D. Va. 2011). This burden applies to all eligibility requirements "and when doubts exist . . . they should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928); *see also INS v. Pangilinan*, 486 U.S. 875, 886 (1988) ("it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect"). Accordingly, "[c]ourts have the power to confer citizenship only 'in strict compliance with the terms of an authorizing statute.'" *Cody v. Casterisano*, 631 F.3d 136, 142 (4th Cir. 2011) (quoting *Pangilinan*, 486 U.S. at 884).

In order to be eligible for naturalization, an applicant must demonstrate that "he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of the [INA]." 8 U.S.C. § 1429. "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." *Id.* § 1101(a)(20). The Board of Immigration Appeals ("BIA") has also established that "an alien who acquires permanent resident status through fraud or misrepresentation has not made a lawful entry." *In re Koloamatangi*, 23 I. & N. Dec. 548, 549 (BIA 2003) (citing *Matter of T-*, 6 I. & N. Dec. 1136 (BIA, A.G. 1954)). Importantly, "[t]he BIA has applied this standard not only to fraud cases, but also to instances in which the alien obtained permanent resident status as a result of a negligent mistake by the Government." *Koszelnik v. Sec'y of DHS*, No. 14-4816, 2016 WL 3648369, at *3 (3d Cir. July 8, 2016); *see also Injeti v. USCIS*, 737 F.3d 311, 316 (4th Cir. 2010) ("The BIA has applied this 'non-fraud' doctrine in other cases, ranging from where a petitioner

has obtained LPR status through the fraud of third parties to those where a petitioner has received LPR status due to an administrative oversight.").

As recognized by the Fourth Circuit, "in the immigration context, the validity of a prior divorce is addressed to determine whether a subsequent marriage is lawful . . . [and] in such situations, the BIA 'look[s] to the law of the state where the subsequent marriage was celebrated to determine whether or not that state would recognize the validity of the divorce.'" *Jahed*, 468 F.3d at 235 (citations omitted) (quoting *Matter of Hosseinian*, 19 I. & N. Dec. 453, 455 (BIA 1987)). As discussed below, the doctrine of comity as applied in Virginia effectively determines whether plaintiff was lawfully admitted to permanent resident status, which serves as the prerequisite for granting his application for naturalization.

## III. ANALYSIS

The dispositive issue is whether the Commonwealth of Virginia would recognize the Ghanaian divorce decree that terminated Obeng's previous marriage to Boampong. More precisely, the issue is whether a Virginia court would recognize the validity of plaintiff's Virginia marriage to Obeng in light of Obeng's Ghanaian divorce from Boampong or whether a Virginia court would refuse to recognize the validity of plaintiff's marriage to Obeng based on the absence of domicile in Ghana by either Obeng or Boampong when the divorce decree was issued.[8]

---

[8] *Compare* [Doc. No. 10 at 4] (stating plaintiff's view that "[t]he sole issue in determining whether Mr. Annan's application for naturalization may be approved is whether or not the Commonwealth of Virginia would accept the divorce decree of his wife, Mary Obeng, issued by the Circuit Court in Accra, Ghana") *with* [Doc. No. 13 at 11] (stating defendants' view that "[t]he sole issue in the instant action is whether plaintiff was eligible for the issuance of an immigrant visa as Obeng's spouse, and thus, whether he was 'lawfully admitted to permanent residence' under federal immigration law in May 2005" and that "[a]ll parties agree that in order to resolve this issue, this Court must determine whether USCIS erred in concluding that Virginia law would not have recognized the Ghanaian divorce decree that putatively terminated Obeng's previous marriage to Boampong as a matter of comity").

The parties agree there are no issues of fact that need to be resolved or to expand upon the administrative record. *See* [Doc. No. 10 at 1] ("Both parties are in agreement that this involves a question of law and no genuine issue of material fact exists."). They also agree that the dispositive issue is the validity of the Ghanaian divorce within the Commonwealth of Virginia.

There does not appear to be any dispute over certain basic principles of law that pertain to the resolution of this case. First, "[e]ach state has exclusive control of the matrimonial status of those domiciled within its borders." *Howe v. Howe*, 18 S.E.2d 294, 297 (Va. 1942); *see also Williams v. North Carolina*, 317 U.S. 287, 299 (1942) ("*Williams I*") (acknowledging that a state has "a rightful and legitimate concern in the marital status of persons domiciled within its borders"). Second, as a general proposition, a state will recognize a decree of divorce validly issued "either under the 'full faith and credit' clause of the United States Constitution, or in the case of divorces rendered in foreign countries, under the principle of comity, provided that recognition would not contravene public policy." *Matter of Luna*, 18 I. & N. Dec. 385, 386 (BIA 1983). Third, a foreign court must have jurisdiction to render a valid decree, and the applicable tests of jurisdiction are ordinarily those of the United States, rather than those of the foreign country where the divorce was obtained. *Id.* at 385.

The primary point of contention between the parties relates to the role that domicile plays in connection with Virginia's willingness to recognize a foreign divorce based on the doctrine of comity. According to USCIS, the domicile of at least one of the divorcing parties in the foreign jurisdiction is an "immutable prerequisite" to the recognition of that country's divorce decree. *See* [Doc. No. 13 at 13] ("before a foreign divorce decree can be recognized and given effect, at least one of the individuals that were the subject of the divorce decree must have been domiciled

in the foreign jurisdiction at the time of the decree"). For plaintiff, the absence of domicile at the time the divorce decree is issued is not dispositive and must be considered together with other factors, including the divorcing parties' connection to the foreign jurisdiction and the extent to which recognition of the foreign decree would offend Virginia's public policies.

It appears clear that for the purposes of recognition under the full faith and credit clause of the Constitution, a divorce decree must be issued in a jurisdiction where at least one of the divorcing parties is domiciled at the time the decree is issued. *See, e.g., Williams v. North Carolina*, 325 U.S. 226, 229 (1945) ("*Williams II*") ("Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicile."). But Virginia, like all states, considers whether a foreign country's divorce decree should be recognized not under the full faith and credit clause, but rather under the doctrine of comity, which the Supreme Court of Virginia has explained as follows:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor one of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Oehl v. Oehl*, 272 S.E.2d 441, 443 (Va. 1980) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)). In assessing whether a foreign order or decree should be recognized under the doctrine of comity, the Supreme Court of Virginia has generally described the broad contours of this doctrine as follows:

> It is not, however, the role of the Virginia courts when asked to afford comity to an order of a court of a foreign jurisdiction to act as surrogates for the appellate courts of that jurisdiction. We presume that the foreign court is in a better position than the Virginia courts to determine the substantive law of its jurisdiction and, thus, afford a high degree of deference to its judgment in such matters. Such deference is particularly appropriate where . . . the foreign court enters a clarifying order specifically addressing the substantive law of its judicatory

9

> domain upon which the proceedings there are premised. The determination whether to grant comity to such an order is not a matter of the ultimate viability of the underlying claim in the foreign jurisdiction but, rather, whether the substantive law of the foreign jurisdiction as addressed and expressed by the foreign court in its clarifying order is "in terms of moral standards, societal values, personal rights, and public policy . . . reasonably comparable to that of Virginia."

*Am. Online, Inc. v. Nam Tai Elecs. Inc.*, 571 S.E.2d 128, 134 (Va. 2002). The Virginia Court of Appeals has summarized this doctrine for the purposes of domestic relations matters as follows:

> Comity, in the legal sense, is the recognition and effect which a forum jurisdiction gives within its territory to the legislative, executive, and judicial acts of a foreign jurisdiction, giving due regard to a number of factors, including: duty; mutual interests in reciprocity; courtesy; convenience; public policy and preservation of valued morals in the forum; the rights of the forum's citizens and those under the protection of its laws; and the factual circumstances surrounding each claim for its recognition.

*Clark v. Clark*, 398 S.E.2d 82, 88 (Va. Ct. App. 1990) (citations omitted). *See generally* 4A MICHIE'S JURISPRUDENCE, *Conflict of Laws, Domicile and Residence* § 4. Consistent with these pronouncements, the Fourth Circuit has recognized that "[t]he general rule is that a [foreign] decree of divorce valid where rendered is valid everywhere and will be recognized . . . under the principle of comity, provided that recognition would not contravene public policy." *Jahed*, 468 F.3d at 235 (alterations in original) (quoting *Matter of Luna*, 18 I. & N. Dec. 385, 386 (BIA 1983)). Other courts have described comity as "a complex and elusive concept . . . [that] varies according to the factual circumstances surrounding each claim for its recognition." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 973 (D.C. Cir. 1984).

Courts in Virginia, both state and federal, have refused to recognize another country's divorce decree in cases where neither party was domiciled in that foreign jurisdiction at the time of divorce. *See, e.g., Furman v. Furman*, 3 Va. Cir. 82 (Va. Cir. Ct. 1983) (declining to recognize Haitian divorce obtained by husband under the doctrine of comity since neither party

established their domicile in Haiti and finding that even though the husband was physically present in Haiti, he did not indicate an intention to remain in Haiti for an indefinite period of time); *Howe v. Howe*, 18 S.E.2d 294, 300 (Va. 1942) (noting that "[a]n element which has been considered and given great weight against the recognition of a foreign divorce decree under the rules of comity is the fact that the plaintiff went to the state or country in which the decree was rendered merely for the purposes of obtaining the decree, intending to remain no longer than was necessary to accomplish his purpose"); *Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358, 1363 n.10 (E.D. Va. 1980) (noting that "a divorce obtained in a foreign country will normally not be recognized as valid if neither spouse was a good-faith domiciliary in that country"). The BIA has also refused to recognize foreign divorce decrees in cases where neither party was domiciled in the issuing jurisdiction at the time the decree was issued. *See, e.g., Matter of Ma*, 15 I. & N. Dec. 70 (BIA 1974) (declining to recognize a Korean divorce between two Korean citizens under the doctrine of comity because "neither were domiciled together as husband and wife in Korea" and finding "no American cases recognizing foreign divorces where neither party was either domiciled or physically present in the divorcing jurisdiction when the action was commenced and where the couple never lived as husband and wife in the divorcing jurisdiction"). None of these cases, however, involved facts and circumstances comparable to those presented here, where there are extensive contacts with the issuing jurisdiction, including a substantial period of domicile in that country during the marriage, the parties' citizenship in that country at the time the divorce decree, and the consent and participation of both parties according to the laws of that country. Nor has the Court located any case, state or federal, applying the Virginia doctrine of comity to facts comparable to those presented here.

Other courts, however, applying the general principles of comity, comparable to those articulated in Virginia, have recognized the validity of a foreign divorce decree where neither party was domiciled in the issuing country at the time of divorce, but there were other close connections to the foreign forum. *See Oettgen v. Oettgen*, 94 N.Y.S.2d 168 (N.Y. Sup. Ct. 1949); *Gonzales v. Gonzales*, 46 N.Y.S.2d 270 (N.Y. Sup. Ct. 1943); *Hansen v. Hansen*, 8 N.Y.S.2d 655 (N.Y. App. Div. 1938). As summarized by the BIA, these cases effectively adopted the following criteria for determining whether to recognize a foreign divorce decree in the absence of domicile at the time of divorce:

> (1) the parties were married in the jurisdiction where they were subsequently divorced; (2) they lived in that jurisdiction as husband and wife for a period of time; (3) although they were not personally before the divorcing court, or even within the jurisdiction at the time of the divorce, both parties had notice of the action and either appeared by counsel or consented to personal jurisdiction; and (4) in the *Hansen* and *Oettgen* cases, and doubtless in *Gonzales* as well, both parties to the divorce were citizens of the country granting the divorce.

*Matter of Ma*, 15 I. & N. Dec. at 72. Where no particular state law applies, the BIA has adopted these criteria in determining whether a foreign country's divorce decree should be recognized for immigration purposes. *Id.* at 71. Likewise, the Fourth Circuit has cited these criteria with approval where no specific state law applies.[9] *Jahed*, 468 F.3d at 235.

---

[9] Based on the facts of that case, the Fourth Circuit refused to recognize an Islamic divorce issued in Pakistan dissolving an Afghani marriage because neither party was domiciled in Pakistan at the time the divorce was issued. It also stated in *dicta* that Jahed's claim would still fail, even if Virginia law applied, since the parties were domiciled in Virginia and not Pakistan at the time of the divorce decree. *Id.* at 236 n.5 (citing *Corvin v. Commonwealth*, 108 S.E. 651, 653 (Va. 1921) (holding that when a person travels to a foreign jurisdiction without a determination to make the jurisdiction her legal domicile and obtains a divorce in that jurisdiction, the divorce is void); and *Furman v. Furman*, 3 Va. Cir. 82, 82, 1983 Va. Cir. LEXIS 97, at *1 (Va. Cir. Feb.9, 1983) (holding that a foreign divorce will not be recognized as a matter of comity in Virginia unless at least one of the spouses was a domiciliary in that country at the time the divorce was granted)). However, the Fourth Circuit had no occasion to consider whether it would recognize the Pakistani divorce decree had the criteria set forth in *Matter of Ma* been satisfied.

Based on the facts of this case, a Virginia court would have had before it at the time of the parties' Virginia marriage in 2001 the following facts: (1) Obeng and Boampong entered into a customary marriage in Ghana on August 20, 1992; (2) at the time of their customary marriage, both Obeng and Boampong were citizens of Ghana and were domiciled in Ghana; (3) following their marriage, Obeng and Boampong lived as husband and wife in Ghana until they immigrated to the United States on May 3, 1997; (4) while living in the United States, the parties arranged for a customary divorce through Boampong's mother (Ernestina Gyamfuah) and Obeng's father (Albert Lawson), who represented that the customary marriage was dissolved on August 6, 1998; (5) the Circuit Court of Accra, Ghana subsequently confirmed the dissolution of the customary marriage by Order dated October 19, 1999; (6) the Order certifying the dissolution of marriage was consented to by the parties through their representatives (or "applicants"), who appeared before the Circuit Court of Accra, Ghana, through retained counsel, in connection with their *ex parte* Motion for Grant of Confirmation of Dissolution of Customary Marriage Between Mary Obeng and Adinkrah Kwasi Boampong; (7) the dissolution of a customary marriage in Ghana "must be resolved by the respective head of households which in this case were [Obeng's] parents and Adinkrah's mother" [Doc. No. 1, Ex. B]; and (8) there is no evidence of fraud or other improper conduct in procuring the customary divorce or subsequent confirmation of that divorce by the Circuit Court of Accra, Ghana.[10]

---

[10] The administrative record concerning Obeng's domicile at the time of the divorce is limited; and plaintiff contends that Obeng was domiciled in Ghana when the Ghanaian divorce proceedings occurred. While USCIS assumed that neither Boampong nor Obeng was domiciled in Ghana at the time of the Ghanaian divorce decree, the record does not affirmatively establish either's domicile at that point in time under either Virginia or Ghanaian law. For example, the administrative record does not establish that Obeng affirmatively declared a change in domicile from Ghana to the United States, although that inference may be, but is not necessarily, drawn from her applying for and receiving permanent resident status. It also appears that USCIS never considered whether the unquestioned domicile of the parents had any significance in connection with Obeng's domicile, since their participation in the customary divorce was necessary as

13

Were a Virginia court to assess the validity of the Ghanaian customary divorce at the time of plaintiff's I-485 application in 2003, a Virginia court would be faced with the following additional facts: (1) relying on that divorce, plaintiff and Obeng married in Virginia on January 16, 2001; (2) relying on that divorce and their subsequent Virginia marriage, plaintiff and Obeng established and maintained a marital union in Virginia that has produced multiple children; (3) that divorce, and the manner in which it was obtained, were apparent from the face of the divorce decree submitted to USCIS (i.e., through the participation of persons other than the divorcing parties themselves); and (4) there is no evidence that Obeng concealed or misrepresented any of the facts pertaining to that divorce.

The facts pertaining to Obeng's customary divorce would satisfy the criteria for recognizing a foreign divorce decree in the absence of domicile at the time of the divorce, as listed in *Matter of Ma* and generally adopted by the BIA, and as accepted by the Fourth Circuit in *Jahed*; and the Court concludes that the Commonwealth of Virginia would likewise recognize the Ghanaian divorce decree for the purpose of recognizing the validity of plaintiff's Virginia marriage to Obeng, either at the time of Obeng's I-130 petition in 2001 or plaintiff's I-485 application in 2003.

---

"heads of household" (and in fact they were the "applicants" for the confirmation of the divorce). In any event, while there is arguably a genuine issue of disputed fact as to Obeng's domicile at the time she obtained her Ghanaian divorce, the resolution of that issue is not material to the Court's decision since the Court has assumed that neither Obeng nor Boampong was domiciled in Ghana at the time the Ghanaian divorce decree was issued. Should, on appeal, the domiciliary status of Obeng and/or Boampong be viewed as dispositive, and the Court's decision reversed on the grounds that plaintiff failed to affirmatively establish Obeng's domiciliary status in Ghana at the time of divorce, the Court, on remand, would receive, unless directed otherwise, additional evidence and make specific factual findings concerning Obeng's and Boampong's domicile when the Ghanaian divorce decree was issued. A related issue to be addressed would be whether the applicable date for determining domicile is the date of the customary divorce on August 6, 1998, or the date it was *confirmed* by the Order of the Circuit Court on October 19, 1999.

Central to the doctrine of comity is Virginia's public policy, founded on "the rights of [Virginia's] citizens and those under the protection of its laws;" and whether that public policy would be offended by recognition of the foreign divorce. *Clark*, 398 S.E.2d at 88 (citing *Oehl*, 272 S.E.2d at 443). Under the facts and circumstances of this case, the Court finds that a Virginia court would conclude that public policy with respect to marriage would not be offended by the recognition of Obeng's Ghanaian divorce. Both parties to that divorce had notice of and consented to those proceedings. Both parties had historically close ties to Ghana, were citizens of Ghana, and maintained their marital domicile in Ghana for a substantial period of time. The Circuit Court of Accra, Ghana exercised personal jurisdiction on reasonable grounds, and the divorce was obtained on grounds that do not offend Virginia's public policy embodied in its marriage and divorce laws. *See Clark*, 398 S.E.2d at 88 ("The public policy of Virginia requires that before a spouse may obtain a divorce, he or she must prove the grounds therefore and no complaint for divorce shall be defaulted, taken for confessed, or granted upon the pleadings or upon uncorroborated testimony."). Moreover, Virginia's public policy in this area clearly extends to the welfare and rights of minor children within its jurisdiction. Here, the parties married in Virginia and established a family with multiple children based on what no one questions was the good faith belief that Obeng was free to marry after obtaining a valid divorce from Boampong, a belief that appeared to be confirmed by decisions rendered by USCIS in 2004 and 2005 without any fraud or improper conduct on the part of Obeng, Boampong, or plaintiff.

Based on the foregoing, the Court finds that under the doctrine of comity, the Commonwealth of Virginia would recognize Obeng's Ghanaian divorce as valid for purposes of terminating Obeng's previous marriage to Boampong and establishing the validity of her subsequent marriage to plaintiff in Virginia.

Case 1:15-cv-01558-AJT-MSN Document 24 Filed 08/23/16 Page 16 of 16 PageID# 412

## IV. CONCLUSION

The Court concludes that USCIS erred when it determined that plaintiff was not lawfully admitted to the United States for permanent residence, and therefore not statutorily eligible for naturalization, because the Commonwealth of Virginia would not recognize Obeng's Ghanaian divorce and therefore would not recognize the validity of plaintiff's subsequent Virginia marriage to Obeng that allowed plaintiff to obtain his status as a permanent resident. The Court therefore finds and concludes that there are no genuine issues of material fact and that plaintiff is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record. An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 23, 2016